# CASE NO.: 23-16089

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE DECASTRO,

          Plaintiff-Appellant,

    vs.

LAS VEGAS METROPOLITAN
POLICE DEPARTMENT; et al,

          Defendants-Appellees.

Appeal from the United States District Court
District of Nevada, Las Vegas
Case No.: 2:23-cv-00580-APG-EJY

## DEFENDANTS-APPELLEES' ANSWERING BRIEF

Marquis Aurbach
Craig R. Anderson, Esq.
Nevada Bar No. 6882
Nicholas M. Adams, Esq.
Nevada Bar No. 15859
10001 Park Run Drive
Las Vegas, Nevada 89145
Telephone: (702) 382-0711
Facsimile: (702) 382-5816
canderson@maclaw.com
nadams@maclaw.com
Attorneys for Defendants-Appellees
LVMPD, Ofc. Torrey, Ofc. Bourque,
Ofc. Dingle, Ofc. Sorenson, Ofc.
Sandoval and Ofc. Doolittle

## CORPORATE DISCLOSURE STATEMENT

Defendant-Appellee Las Vegas Metropolitan Police Department is a governmental entity and has no corporate affiliation. Defendant-Appellees Branden Bourque, Erland Jason Torrey, C. Dingle, B. Sorenson, Jesse Sandoval, and C. Doolittle are individuals. Collectively, these Defendants-Appellees are referred to as the LVMPD Defendants.

Dated this 10th day of October, 2023.

MARQUIS AURBACH

By /s/ Craig R. Anderson
    Craig R. Anderson, Esq.
    Nevada Bar No. 6882
    Nicholas M. Adams, Esq.
    Nevada Bar No. 15859
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for Defendants-Appellees
    LVMPD, Ofc. Torrey, Ofc. Bourque,
    Ofc. Dingle, Ofc. Sorenson, Ofc.
    Sandoval and Ofc. Doolittle

# **TABLE OF CONTENTS**

I. INTRODUCTION .............................................................1

II. JURISDICTIONAL STATEMENT ................................2

III. STATEMENT OF ISSUES PRESENTED FOR REVIEW ...........................3

IV. STATEMENT OF THE CASE ......................................3

  A. THE PARTIES. ...................................................3

  B. THE SUBJECT INCIDENT. ...............................4

  C. PROCEDURAL HISTORY. .................................5

V. SUMMARY OF ARGUMENT ......................................6

VI. ARGUMENT ...............................................................8

  A. THE DISTRICT COURT PROPERLY DENIED DECASTRO'S MOTION FOR A PRELIMINARY INJUNCTION TO ENJOIN STATE CRIMINAL PROCEEDINGS. ...............................8

    1. The Doctrine of *Younger* Abstention. ......................8

    2. The District Court Properly Held that *Younger* controls here and that No Injunction Should Issue. .................22

    3. DeCastro's New Arguments in the Motion for Reconsideration Should Not Be Given Consideration. ............30

  B. THE DISTRICT COURT PROPERLY DENIED DECASTRO'S MOTION FOR RECONSIDERATION OF HIS MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN STATE CRIMINAL PROCEEDINGS. ...............................31

VII. CONCLUSION ............................................................33

MAC:14687-456 5219442_2.docx

# TABLE OF AUTHORITIES

## CASES

*Addison v. City of Baker City*,
  758 F. App'x 582 (9th Cir. 2018) ........................................................23

*All Hawaii Tours, Corp. v. Polynesian Cultural Center*,
  116 F.R.D. 645 (D.Hawaii 1987),
  *rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988) ........................32

*Askins v. U.S. Dep't of Homeland Sec.*,
  899 F.3d 1035 (9th Cir. 2018) ............................................................23

*Backlund v. Barnhart*,
  778 F.2d 1386 (9th Cir. 1985) ............................................................32

*Beal v. Missouri Pac. R. Co.*,
  312 U.S. 45 (1941) ...................................................................... 11, 15

*Brown v. Basznianyn*,
  2023 WL3098982 (D. Az. Mar. 29, 2023) ............................................1

*Cameron v. Johnson*,
  390 U.S. 611 (1968) .............................................................................21

*Cantwell v. Connecticut*,
  310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940)....................... 19, 27

*Dombrowski v. Pfister*,
  380 U.S. 479 (1965) ..................................................................... passim

*Doop v. Wolfson*,
  No. 222CV00440JADDJA, 2022 WL 1166438 (D. Nev. Apr. 20, 2022) ..........26

*Doran v. Salem Inn*,
  422 U.S. 922 (1975) ...................................................................... 28, 31

MAC:14687-456 5219442_2.docx

*Douglas v. City of Jeannette*,
319 U.S. 157 (1943) ................................................................................ passim

*Duran v. City of Douglas, Ariz.*,
904 F.2d 1372 (9th Cir. 1990) .............................................................23

*Ex parte Young*,
209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908)..............................16

*Fenner v. Boykin*,
271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926)......................... 15, 16

*Ford v. City of Yakima*,
706 F.3d 1188 (9th Cir. 2013) .............................................................23

*Fordyce v. City of Seattle*,
55 F.3d 436 (9th Cir. 1995)..................................................................23

*Fuller v. M.G. Jewelry*,
950 F.2d 1437 (9th Cir.1991) ..............................................................32

*Hawaii Housing Auth. v. Midkiff*,
467 U.S. 229 (1984) ....................................................................... 29, 31

*Hicks v. Miranda*,
422 U.S. 332 (1975)........................................................................ 29, 31

*Huffman v. Pursue. Ltd.*,
420 U.S. 592 (1975)........................................................................ 29, 31

*Knox v. Brown for Oregon*,
702 F. App'x 639 (9th Cir. 2017) ........................................................32

*Kona Enterprises, Inc. v. Estate of Bishop*,
229 F.3d 877 (9th Cir. 2000)...............................................................30

*Maney v. Winges-Yanez*,
643 F. App'x 616 (9th Cir. 2016) ........................................................32

MAC:14687-456 5219442_2.docx

*Marbury v. Madison*,
   5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)............................................................20

*Martello v. Rouillard*,
   689 F. App'x 880 (9th Cir. 2017) ........................................................32

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
   457 U.S. 423 (1982)..........................................................................20

*Novato Fire Protection District v. United States*,
   181 F.3d 1135 (9th Cir.1999) ...............................................................30

*Rosenfeld v. United States Department of Justice*,
   57 F.3d 803 (9th Cir.1995)...................................................................30

*Schneider v. State*,
   308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).......................................... 19, 27

*School District No. 1J, Multnomah County, Oregon v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir.1993)...................................................................30

*Spielman Motor Sales Co. v. Dodge*,
   295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935)..............................................15

*Trentacosta v. Frontier Pacific Aircraft Industries*,
   813 F.2d 1553 (9th Cir. 1987) .............................................................30

*United Mine Workers of America, Dist. 12 v. Illinois Bar Assn.*,
   389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)...................................... 19, 27

*Watson v. Buck*,
   313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941)...................................... 15, 22

*Williams v. Miller*,
   317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489 (1942)..............................................15

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ...................................................................... 29, 31

MAC:14687-456 5219442_2.docx

*Younger v. Harris*,
  401 U.S. 37 (1971) ...................................................................................... passim

## CONSTITUTIONAL PROVISIONS

First Amendment.................................................................................... passim

Fourteenth Amendment ...........................................................................12

## OTHER AUTHORITIES

Aviam Soifer and H.C. Macgill, The *Younger* Doctrine: Reconstructing
  Reconstruction, 55 Texas L. Rev. 1141 (1977) ....................................22

Owen M. Fiss, *Dombrowski*, 86 Yale L.J. 1103 (1977) ..........................21

## RULES

FRAP 4(a)(4)(A)(vi) ..................................................................................3

FRCP 15(a)(1)(A) .....................................................................................6

FRCP 59(e) ....................................................................................... 30, 31

FRCP 60(b) ...........................................................................................310

## STATUTES

1 Stat. 335................................................................................................14

MAC:14687-456 5219442_2.docx

28 U.S.C. §1292(a)(1)......................................................................2

28 U.S.C. §2107(a) .........................................................................3

28 U.S.C. §2283 ...................................................................... 13, 14

42 U.S.C. §1983 .................................................................... 1, 23, 29

NRS 197.190 ........................................................................... 27, 29

NRS 199.280.3 ........................................................................ 27, 29

**<u>TREATISES</u>**

Erwin Chemerinsky, Federal Jurisdiction (5th ed. 2007) .......................................21

## I.     __INTRODUCTION__

This is a 42 U.S.C. §1983 wrongful arrest and excessive force lawsuit. On March 15, 2023, Defendant-Appellee Las Vegas Metropolitan Police Department ("LVMPD") Officer Branden Bourque ("Ofc. Bourque") arrested Plaintiff-Appellant Jose DeCastro ("DeCastro") for obstructing a lawful traffic stop when DeCastro approached and interacted with a detained driver, and subsequently refused to comply with Ofc. Bourque's commands to move away from the detainee. DeCastro asserted numerous causes of action under the theory that the LVMPD Defendants wrongfully arrested him for discriminatory reasons and for exercising his First Amendment right to film.

DeCastro is a First Amendment auditor. First Amendment audits are a social movement that involve photographing or filming police officers to test constitutional rights, particularly the right to photograph and video record police interactions in a public space. If the encounter results in an actual or perceived violation of the auditor's First Amendment rights, the video is posted on YouTube, and the auditor files suit. Auditors are purposefully confrontational and provocative. *See Brown v. Basznianyn*, 2023 WL3098982, *2 (D. Az. Mar. 29, 2023); *see also* https://www.youtube.com/@DeleteLawz1984.

In the proceedings below, DeCastro moved the District Court for a preliminary injunction to stay the ongoing state criminal proceedings under the

MAC:14687-456 5219442_2.docx

theory that the criminal proceedings would chill DeCastro's constitutional rights. Four days after DeCastro brought the motion, and before the LVMPD Defendants could file a response, the District Court issued an Order Denying Motion for Preliminary Injunction, holding that the *Younger* abstention doctrine requires the District Court to abstain from interfering with state court criminal proceedings. DeCastro brought an emergency motion for reconsideration, which the LVMPD Defendants opposed. The District Court denied the motion for reconsideration. DeCastro then filed this appeal.

The District Court properly held that it was required to abstain from interfering with Nevada's state court criminal proceedings against DeCastro pursuant to *Younger*, and that DeCastro failed to show that this case presents the kind of extraordinary circumstances which could justify federal court intervention in pending state court criminal proceedings. As such, no error or abuse of discretion occurred, and this Court should affirm the decision of the District Court.

## II.    <u>JURISDICTIONAL STATEMENT</u>

The Ninth Circuit Court's jurisdiction over this appeal arises from 28 U.S.C. §1292(a)(1) because the order on appeal is one "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court."

MAC:14687-456 5219442_2.docx

The District Court of Nevada issued the order which is now being appealed on June 12, 2023 [SER-004-005], and issued its order denying reconsideration on August 7, 2023 [SER-003]. DeCastro filed his notice of appeal from those orders on August 11, 2023. SER-058-060. Pursuant to 28 U.S.C. §2107(a) and Federal Rule of Appellate Procedure ("FRAP") 4(a)(4)(A)(vi), DeCastro's notice of appeal of the two orders is timely.

## III.   STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.     Whether the District Court erred in denying DeCastro's motion for a preliminary injunction to stay the Nevada state criminal proceedings pursuant to the *Younger* abstention doctrine.

2.     Whether the District Court abused its discretion in denying DeCastro's emergency motion to reconsider motion for preliminary injunction to stay state proceedings.

## IV.   STATEMENT OF THE CASE

### A.   THE PARTIES.

DeCastro is the sole Plaintiff and has brought claims against Defendants Las Vegas Metropolitan Police Department, the State of Nevada, Officer Branden Bourque, Sergeant Erland Torrey ("Sgt. Torrey"), Officer Chadly Dingle ("Ofc. Dingle"), Officer Brandon Sorenson ("Ofc. Sorenson"), Officer Jesse Sandoval ("Ofc. Sandoval"), and Officer Clinton Doolittle ("Ofc. Doolittle"). SER-036-057. All claims stem from a single incident on March 15, 2023, in which DeCastro was

MAC:14687-456 5219442_2.docx

arrested for inserting himself into an active traffic stop and refusing to obey the lawful commands of officers to stand back and allow the officers reasonable space to work. *Id.*

### B. THE SUBJECT INCIDENT.

On March 15, 2023, at approximately 4:30 p.m., Ofc. Bourque was conducting a traffic stop of a silver Hyundai Elantra. SER-040, ¶20. DeCastro approached the traffic stop and began recording and talking to the traffic detainee. SER-040, ¶21. At the time DeCastro approached the traffic stop, Ofc. Bourque was sitting in his LVMPD vehicle. SER-040, ¶20.

Upon noticing DeCastro interacting with the subject of the traffic stop, Ofc. Bourque exited his police vehicle, got DeCastro's attention, and told him to back up. SER-041, ¶22. DeCastro moved five feet. SER-041, ¶22. Ofc. Bourque again told DeCastro to back up from the traffic stop, at which time DeCastro began asserting his rights to record the interaction. SER-041, ¶23. Ofc. Bourque warned DeCastro he would detain DeCastro for obstructing if he did not move further away from the detainee. SER-041, ¶23. DeCastro insisted he had no obligation to back up because of his status as a member of the press and his right to record police interactions. SER-041, ¶¶23-24.

When DeCastro ignored Ofc. Bourque's commands to move back ten feet, Ofc. Bourque told DeCastro he was being detained. SER-041, ¶24. Ofc. Bourque

MAC:14687-456 5219442_2.docx

told the traffic detainee she was free to go. SER-041, ¶25. When Ofc. Bourque attempted to detain DeCastro, DeCastro refused to comply. SER-041, ¶¶25-26. DeCastro asked for a supervisor and walked with Ofc. Bourque to Ofc. Bourque's LVMPD vehicle, at which time Ofc. Bourque informed DeCastro he was being arrested for obstruction. SER-041, ¶26. DeCastro then threatened to sue the officers at the scene. SER-042, ¶33.

Eventually, Defendant Sgt. Torrey arrived at the scene. SER-043, ¶35. Sgt. Torrey authorized Ofc. Bourque's behavior as being within LVMPD policy, and said DeCastro should be arrested. *Id.* As noted in Ofc. Bourque's report and affirmed by Sgt. Torrey, the reasons why DeCastro was arrested were for engaging with a detained driver, refusing to give an officer reasonable space to work, and refusing to obey lawful commands after being advised he was being detained. SER-044, ¶44. Ofc. Bourque's report further stated DeCastro had admitted to getting in trouble numerous times in the past for the same reasons, and his habitual behavior of obstructing police officers and claiming it was justified because of his right to film the police would continue in the area if he was not cited. SER-044, ¶45.

## C.    PROCEDURAL HISTORY.

On April 17, 2023, DeCastro filed his Complaint and initiated this matter. On May 7, 2023, DeCastro filed his First Amended Complaint as a matter of

MAC:14687-456 5219442_2.docx

course pursuant to FRCP 15(a)(1)(A). SER-036-057. On June 1, 2023, the LVMPD Defendants filed a motion for partial dismissal (ECF No. 15).

On June 8, 2023, DeCastro filed his Emergency Motion for Preliminary Injunction to Stay State Proceedings; Request for Judicial Notice. SER-031-035. On June 12, 2023, the District Court issued an Order denying Plaintiff's Emergency Motion for Preliminary Injunction. SER-004-005.

The next day, on June 13, 2023, DeCastro filed his Emergency Motion to Reconsider Motion for Preliminary Injunction to Stay State Proceedings. SER-028-030. On June 20, 2023, the LVMPD Defendants filed their Opposition to Plaintiff's Emergency Motion to Reconsider Motion for Preliminary Injunction to Stay State Proceedings. SER-021-027. DeCastro filed his reply brief on June 22, 2023. SER-014-020. On August 7, 2023, the District Court issued its Order Denying Emergency Motion for Reconsideration. SER-003.

## V.  SUMMARY OF ARGUMENT

The District Court did not err in ruling that the doctrine of *Younger* abstention precluded it from intervening in and enjoining Nevada's state law criminal proceedings against DeCastro. DeCastro requested that the District Court enjoin the state law criminal proceedings against him on the basis that the proceedings would chill his civil rights, without explaining how or why. SER-005. DeCastro also argued that he would be subject to excessive force if he was jailed

awaiting trial, but did not articulate a reason to believe that he will be jailed awaiting trial or why excessive force would be used against him if he was. *Id.* DeCastro argued that the criminal charges against him are not yet pending, even though he acknowledges he has been arrested and charged with two misdemeanors, and explicitly requested that the District Court enjoin and stay the state court criminal proceedings prior to his arraignment hearing. SER-031-034. Lastly, DeCastro's request for injunctive relief did not explain why he would be unable to avail himself of his federal rights in Nevada state court, nor did it explain why the circumstances of this case are so exceptional as to justify the extraordinary remedy of federal intervention in the Nevada criminal case. SER-005. As such, the District Court properly concluded that this case does not present the kind of exceptional circumstances which could justify federal court intervention in Nevada's state court criminal proceedings against DeCastro.

In DeCastro's motion for reconsideration, he again failed to provide a sufficient basis as to why his constitutional rights would be chilled in state court, or why he would be subjected to excessive force or even death if he were to be imprisoned. Instead, he relied upon conclusory statements not based in fact, but instead based on his assumptions. SER-029-030. Moreover, DeCastro raised new arguments in the Motion for Reconsideration which the District Court was under no obligation to consider. *Id.*; *see also* SER-014-020. Accordingly, the District

Court did not abuse its discretion in holding that DeCastro had not provided a sufficient basis for the District Court to reconsider its prior ruling.

## VI.   ARGUMENT

### A.   THE DISTRICT COURT PROPERLY DENIED DECASTRO'S MOTION FOR A PRELIMINARY INJUNCTION TO ENJOIN STATE CRIMINAL PROCEEDINGS.

#### 1.   The Doctrine of *Younger* Abstention.

The quintessential Supreme Court case relating to the "abstention doctrine" in the context of requests for a federal injunction to enjoin and/or stay state court criminal proceedings is *Younger v. Harris*, 401 U.S. 37 (1971), which generally provides that when a state court criminal proceeding is pending and a party attempts to raise related federal constitutional issues in a federal court, federalism dictates that the constitutional claims should be raised and decided in the state court without interference by the federal courts.

#### a.   Douglas v. City of Jeannette.

Before *Younger* was decided, the Supreme Court broached the topic of whether a federal injunction of state court criminal proceedings was proper in *Douglas v. City of Jeannette*, 319 U.S. 157 (1943). In *Douglas*, a group of Jehovah's Witnesses distributed religious literature without a permit in violation of a criminal ordinance in Jeanette, Pennsylvania. They filed a class action lawsuit in federal district court seeking an injunction against threatened prosecution under the

MAC:14687-456 5219442_2.docx

ordinance. *Id.* at 159-60. The Supreme Court held that injunctive relief was improper, and stated:

> It is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guarantees, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction… Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate.'

*Id.* at 163 (citations omitted).

### b.    Dombrowski v. Pfister.

In *Dombrowski v. Pfister*, 380 U.S. 479 (1965), the Supreme Court held that an injunction against the enforcement of certain state criminal statutes could properly issue under the rare circumstances presented in that case.

In *Dombrowski*, a civil rights organization, the Southern Conference Educational Fund ("SCEF") and several of its officers sought a federal court injunction against the enforcement of two Louisiana statutes, the Subversive Activities and Communist Control Law and the Communist Propaganda Control Law. *Dombrowski*, 380 U.S. at 481-82. The complaint alleged that state authorities

MAC:14687-456 5219442_2.docx

were threatening prosecution of the plaintiffs under these laws, not with any expectation of securing valid convictions, but in order to harass the SCEF and to dissuade its members from civil rights activities. *Id.* at 482.

The appellants in *Dombrowski* had offered to prove that their offices had been raided and all their files and records seized pursuant to search and arrest warrants that were later summarily vacated by a state judge for lack of probable cause. *Id.* at 487-88. They also offered to prove that, despite the state court order quashing the warrants and suppressing the evidence seized, the prosecutor was continuing to threaten to initiate new prosecutions of appellants under the same statutes, was holding public hearings at which photostatic copies of the illegally seized documents were being used, and was threatening to use other copies of the illegally seized documents to obtain grand jury indictments against the appellants on charges of violating the same statutes. *Id.*

After quoting the Court's prior statement in *Douglas* concerning the very restricted circumstances under which such an injunction could be justified, the *Dombrowski* Court concluded that the facts as alleged in the complaint depicted a situation in which defending against the State's criminal prosecution will not assure adequate vindication of constitutional rights. *Id.* at 485-86. The unique circumstances presented in *Dombrowski*, as viewed by the Court, sufficiently established the kind of irreparable injury, above and beyond that associated with

MAC:14687-456 5219442_2.docx

the defense of a single prosecution brought in good faith, that had always been considered sufficient to justify federal intervention. *See, e.g.*, *Beal v. Missouri Pac. R. Co.*, 312 U.S. 45 (1941).

To the extent that the *Dombrowski* complaint was based on bad-faith harassment, it stated a basis for federal court relief that could have been justified under the Court's reasoning in *Douglas*. However, Justice Brennan's opinion for the Court offered a substantially broader basis for federal court intervention:

> [T]he Court has recognized that federal interference with a State's good-faith administration of its criminal laws is peculiarly inconsistent with our federal framework. It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings… But the allegations in this complaint depict a situation in which defense of the State's criminal prosecution will not assure adequate vindication of constitutional rights. They suggest that a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in this Court of any adverse determination. These allegations, if true, clearly show irreparable injury.

*Id.* at 484-86.

The *Dombrowski* Court held that "[t]he assumption that defense of a criminal prosecution will generally assure ample vindication of constitutional rights is unfounded" where a statute is challenged on First Amendment overbreadth grounds. *Id.* at 486. "The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the

prospects of its success or failure." *Id.* at 487. The Court went on to find portions of the Louisiana statutes unconstitutionally overbroad on their face. *Id.* at 497.

The *Dombrowski* decision was regarded as signaling a newfound receptivity by federal courts to suits seeking injunctions against criminal proceedings based upon overbroad state statutes. In the wake of *Dombrowski*, many suits were brought seeking injunctive relief against state court criminal proceedings, through few were successful. One such suit was *Younger v. Harris*, 401 U.S. 37 (1971).

### c.    **Younger v. Harris.**

On September 20, 1966, John Harris, Jr., who had been advocating the aims of his political party via the distribution of pamphlets on the steps of the Los Angeles County Courthouse, was indicted in the California State Court and charged with a violation of the California Criminal Syndicalism Act. *See Younger*, 401 U.S. at 38. Harris brought suit in the federal District Court to enjoin the District Attorney of Los Angeles County from prosecuting him, alleging that the prosecution and the presence of the statute inhibited him in the exercise of his rights of free speech and press as guaranteed by the First and Fourteenth Amendments to the U.S. Constitution. *Id.* at 39. Harris asserted that he would suffer irreparable injury by being deprived of his constitutional rights unless a federal injunction was issued. *See id.* The federal District Court held that the statute was void for vagueness and overbroad in violation of the First and

Fourteenth Amendments, and issued an injunction against enforcement of the statute. *Id.* at 40.

District Attorney Evelle Younger appealed the decision, contending that issuance of the injunction was a violation of the long-standing judicial policy of nonintervention and of 28 U.S.C. §2283. *Id.* The Supreme Court ultimately ruled that the judgment of the District Court, enjoining the district attorney from prosecuting under the statute, "must be reversed as a violation of the national police forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id.* at 41.

### i.  The *Younger* Court's Reasoning.

In reversing the decision of the district court and limiting the circumstances under which federal courts may intervene and interfere with state court criminal proceedings, the *Younger* Court explored the history of the abstention doctrine and articulated the profound policy considerations underlying the doctrine. This subsection details the *Younger* Court's historical and policy-based reasoning for limiting federal court intervention in state court criminal proceedings.

Since the beginning of this country's history, Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts. *Id.* at 43. The *Younger* Court, in providing context to that general rule, provided:

MAC:14687-456 5219442_2.docx

In 1793 an Act unconditionally provided: '(N)or shall a writ of injunction be granted to stay proceedings in any court of a state * * *.' 1 Stat. 335, c. 22, s 5. A comparison of the 1793 Act with 28 U.S.C. s 2283, its present-day successor, graphically illustrates how few and minor have been the exceptions granted from the flat, prohibitory language of the old Act. During all this lapse of years from 1793 to 1970 the statutory exceptions to the 1793 congressional enactment have been only three; (1) 'except as expressly authorized by Act of Congress'; (2) 'where necessary in aid of its jurisdiction'; and (3) 'to protect or effectuate its judgments.'

*Id.*

The policy reasons for this longstanding public policy against federal court interference with state court proceedings are plain. *See id.* One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief. *Id.* at 43-44.

This underlying reason for restraining courts of equity from interfering with criminal prosecutions is reinforced by an even more vital consideration, the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. *Id.* at 44. This, perhaps for lack of a better and clearer way to describe it, is referred to by many as "Our Federalism," and one familiar with the

MAC:14687-456 5219442_2.docx

profound debates that ushered our Federal Constitution into existence is bound to respect those who remain loyal to the ideals and dreams of "Our Federalism." *Id.*

Based on the aforementioned reasons, the Supreme Court has repeated time and time again that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions. *Id.* at 45. In *Fenner v. Boykin*, 271 U.S. 240, 46 S.Ct. 492, 70 L.Ed. 927 (1926), suit had been brought in the Federal District Court seeking to enjoin state prosecutions under a recently enacted state law that allegedly interfered with the free flow of interstate commerce. *Id.* The Supreme Court, in a unanimous opinion made clear that such a suit, even with respect to state criminal proceedings not yet formally instituted, could only be proper under very special circumstances. *Id.*

These principles, made clear in the *Fenner* case, have been repeatedly followed and reaffirmed in other cases involving threatened prosecutions. *Id.* (citing *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935); *Beal v. Missouri Pac. R. Co.*, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577 (1941); *Watson v. Buck*, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416 (1941); *Williams v. Miller*, 317 U.S. 599, 63 S.Ct. 258, 87 L.Ed. 489 (1942); *Douglas v. City of Jeannette*, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943)).

In all of these cases, the Court stressed the importance of showing irreparable injury, the traditional prerequisite to obtaining an injunction. *Id.* at 46.

In addition, however, the Court also made clear that in view of the fundamental policy against federal interference with state criminal prosecutions, even irreparable injury is insufficient unless it is 'both great and immediate.' *Id.* (citing *Fenner*, supra). Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. *Id.* Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution. *Id.* (citing *Ex parte Young*, 209 U.S. 123, 145-147, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

### ii. The *Younger* Court Limited the *Dombrowski* Decision.

In *Younger*, the Supreme Court limited and clarified its decision in *Dombrowski*, refuting the District Court's interpretation of the case which would have substantially broadened the availability of injunctions against state criminal proceedings when a state statute is found to be vague and overbroad on its face in violation of the First Amendment.

The *Younger* Court recognized that there are some statements in the *Dombrowski* opinion that would seem to support the argument that *Dombrowski* substantially broadened the availability of injunctions against state court criminal proceedings. *Younger*, 401 U.S. at 50. However, the Court clarified that such

MAC:14687-456 5219442_2.docx

statements were unnecessary to the decision of that case, because the Court ultimately found that the plaintiffs had alleged a basis for equitable relief under the long-established standards, namely bad-faith and harassment. *Id.* In addition, the Court did not regard the reasons adduced to support broadening the availability of such injunctions as sufficient to justify such a substantial departure from the established doctrines regarding the availability of injunctive relief in these circumstances. *Id.*

It is undoubtedly true, as the Court stated in *Dombrowski*, that a criminal prosecution under a statute regulating expression usually involves imponderables and contingencies that themselves may inhibit the full exercise of First Amendment freedoms. *Id.* (citing *Dombrowski*, 380 U.S. at 486). But this sort of "chilling effect," as the Court called it, should not by itself justify federal intervention. *Id.* In the first place, the chilling effect cannot be satisfactorily eliminated by federal injunctive relief. *Id.* In *Dombrowski* itself, the Court stated that the injunction to be issued there could be lifted if the State obtained an "acceptable limiting construction" from the state courts. *Id.* The Court then made clear that, once this was done, prosecutions could then be brought for conduct occurring before the narrowing construction was made, and proper convictions could stand so long as the defendants were not deprived of fair warning. *Id.* (citing *Dombrowski*, 380 U.S. at 491 n. 7). The kind of relief granted in *Dombrowski* thus

does not effectively eliminate uncertainty as to the coverage of the state statute and leaves most citizens with virtually the same doubts as before regarding the danger that their conduct might eventually be subjected to criminal sanctions. *Id.* at 50-51. The chilling effect can, of course, be eliminated by an injunction that would prohibit any prosecution whatsoever for conduct occurring prior to a satisfactory rewriting of the statute. *Id.* at 51. But the States would then be stripped of all power to prosecute even the socially dangerous and constitutionally unprotected conduct that had been covered by the statute until a new statute could be passed by the state legislature and approved by the federal courts in potentially lengthy trial and appellate proceedings. *Id.* Thus, in *Dombrowski* itself, the Court carefully reaffirmed the principle that even in the direct prosecution in the State's own courts, a valid narrowing construction can be applied to conduct occurring prior to the date when the narrowing construction was made, in the absence of fair warning problems. *Id.*

Moreover, the existence of a "chilling effect," even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. *Id.* Where a statute does not directly abridge free speech, but—while regulating a subject within the State's power—tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for

control of the conduct and the lack of alternative means for doing so. *Id.* (citing *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *United Mine Workers of America, Dist. 12 v. Illinois Bar Assn.*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967)).

Just as the incidental "chilling effect" of such statutes does not automatically render them unconstitutional, the chilling effect that admittedly can result from the very existence of certain laws on the statute books does not in itself justify prohibiting the State from carrying out the important and necessary task of enforcing these laws against socially harmful conduct that the State believes in good faith to be punishable under its laws and the Constitution. *Id.* at 51-52.

Beyond all this is another, more basic consideration. *Id.* at 52. Procedures for testing the constitutionality of a statute 'on its face' in the manner apparently contemplated by *Dombrowski*, and for then enjoining all action to enforce the statute until the State can obtain court approval for a modified version, are fundamentally at odds with the function of the federal courts in our constitutional plan. *Id.* The power and duty of the judiciary to declare laws unconstitutional is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision; a statute apparently governing a dispute cannot be applied by judges, consistently with their obligations under the

Supremacy Clause, when such an application of the statute would conflict with the Constitution. *Id.* (citing *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803)).

For these reasons, fundamental not only to the federal system of the United States but also to the basic functions of the Judicial Branch of the National Government under our Constitution, the *Younger* Court held that the *Dombrowski* decision should not be regarded as having upset the settled doctrines that have always confined very narrowly the availability of injunctive relief against state criminal prosecutions. *Id.* at 53. The *Younger* Court rejected the notion that the *Dombrowski* opinion stands for the proposition that a federal court can properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights. *Id.*

### d.  The Exceptions to *Younger* Abstention.

*Younger* and successive Supreme Court decisions relating to the propriety of federal injunctions in the context of state court criminal proceedings recognized two exceptions to the general rule that federal courts ought not intervene in state court criminal proceedings. Those two exceptions are: (1) bad-faith prosecution / harassment; and (2) a flagrantly and patently unconstitutional law. *See, e.g., Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 435-37 (1982).

MAC:14687-456 5219442_2.docx

The bad-faith exception predates *Younger*, and essentially asks whether the party seeking injunctive relief has demonstrated that the state law criminal charges against him or her were brought in bad-faith and for the purpose of harassment. *Cameron v. Johnson*, 390 U.S. 611, 622-23 (1968) (citing *Dombrowski*, 380 U.S. at 485). The Supreme Court understood *Dombrowski* to be a case presenting a situation of the "impropriety of (state officials) invoking the statute in bad faith to impose continuing harassment in order to discourage appellants' activities..." *Cameron*, 390 U.S. at 619 (1968). In contrast, the *Cameron* Court and the *Younger* Court found no basis in the appellate record of harassment, intimidation, or oppression and, accordingly, found that no injunction should issue. *See Cameron*, 380 U.S. at 626-28; *Younger*, 401 U.S. at 55.

In fact, since *Younger* was decided, it has been extraordinarily rare for federal courts to find the existence of a bad faith prosecution sufficient to justify a federal court injunction against state court criminal proceedings. Legal scholar Owen Fiss concluded six years after *Younger* that "the universe of bad-faith harassment claims that can be established is virtually empty." Owen M. Fiss, *Dombrowski*, 86 Yale L.J. 1103 (1977). Legal scholar and commentator Erwin Chemerinsky has stated, "the bad-faith prosecution exception seems narrowly limited to facts like those in *Dombrowski*." Erwin Chemerinsky, Federal Jurisdiction (5th ed. 2007), 859-860.

With respect to the patently unconstitutional law exception, the Supreme Court has described it as follows: "It is of course conceivable that a statute might be flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Younger*, 401 U.S. at 54 (citing *Watson v. Buck*, 313 U.S. 387 (1941)). The exception is mostly a hypothetical, as it is unlikely the Supreme Court will ever review a statute which is flagrantly and patently violative of express constitutional prohibitions in ***every clause, sentence, and paragraph***, and in whatever manner and against whomever an effort might be made to apply it. In the many years since the *Younger* decision, the Supreme Court has not found there to exist a patently unconstitutional law sufficient to justify a federal court injunction against state court criminal proceedings. *See* Aviam Soifer and H.C. Macgill, The *Younger* Doctrine: Reconstructing Reconstruction, 55 Texas L. Rev. 1141, 1204-06 n.259 (1977).

### 2. The District Court Properly Held that *Younger* controls here and that No Injunction Should Issue.

In the Preliminary Injunction Motion, DeCastro noted that he has been arrested and cited for: (1) "False Statement to or Obstruct Police Officer" NRS 197.190; and (2) "Resisting Public Officer" NRS 199.280.3. SER-032. Those misdemeanor charges constitute the state law criminal proceedings which DeCastro seeks to stay via a federal injunction. DeCastro generally argued that

MAC:14687-456 5219442_2.docx

because he was merely exercising his free speech in recording the police and challenging the requests of the police officers, and because the charges have not yet been brought against him, the threat of criminal prosecution and imprisonment would have a chilling effect on his constitutional rights. SER-032. DeCastro contends that as a result, the proper course of action would be for the District Court to stay the state court criminal proceedings against him and to allow him to proceed with his §1983 claims in federal court.

In support of his Preliminary Injunction Motion, DeCastro made four one-sentence legal arguments. DeCastro first argued that his exercising his clearly established right to free speech is not obstruction or resisting. SER-033 (citing *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990)). Secondly, DeCastro contended that he had the clearly established First Amendment right to record police. SER-033 (citing *Fordyce v. City of Seattle*, 55 F.3d 436, 439 (9th Cir. 1995), *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1044 (9th Cir. 2018), *Ford v. City of Yakima*, 706 F.3d 1188 (9th Cir. 2013)). Third, DeCastro asserted that he has the right not to be harassed based on his viral videos criticizing the police. SER-033 (citing *Addison v. City of Baker City*, 758 F. App'x 582 (9th Cir. 2018)). Fourth and finally, DeCastro contended that the federal district court has the authority to stay an action that chills DeCastro's civil rights, especially as

MAC:14687-456 5219442_2.docx

charges have not yet been brought. SER-033 (citing *Dombrowski v. Pfister*, 380 U.S. 479, 85 S. Ct. 1116 (1965); Fed. R. Civ. P. Rule 65).

As this Court can see, the first two arguments raised by DeCastro in support of his Preliminary Injunction Motion are arguments about the merits of his federal claims and the merits of the state law criminal proceedings against him and have little to no relevancy as to his request for injunctive relief pursuant to a *Younger* analysis. DeCastro's third argument appears to be an assertion of bad-faith prosecution based upon his purportedly viral videos criticizing the police. DeCastro's fourth and final argument, relying upon *Dombrowski*, relates to the authority of federal courts to enjoin and/or stay state criminal proceedings. Taken together, however, DeCastro's arguments do not demonstrate that this case falls within the narrow set of extraordinary cases in which it is appropriate for the federal courts to interfere with state court criminal proceedings.

In the Motion for Reconsideration, DeCastro contends that the District Court made a clear error in denying his Preliminary Injunction Motion because the District Court did not address his argument that the charges against him had not yet been brought and thus were not "pending." However, DeCastro acknowledged in the Preliminary Injunction Motion that he was arrested and cited for the two misdemeanor charges, and asked the Court to stay what he believed to be his state law criminal arraignment hearing. Thus, DeCastro's contention that the criminal

MAC:14687-456 5219442_2.docx

charges against him were not pending at the time he sought a federal injunction is factually inaccurate. Moreover, DeCastro failed to present the District Court with any evidence that the charges against him were not yet pending, instead offering only his self-serving contentions that charges have not been brought, and, therefore, the criminal proceedings were not pending. Lastly, as explored below, whether or not criminal charges against DeCastro were "pending" is not pertinent to the *Younger* analysis where, as here, DeCastro is not challenging the criminal statutes as constitutionally impermissible.

> **a.** **The Criminal Charges Against DeCastro Were Not Brought in Bad-Faith or to Harass DeCastro.**

Although DeCastro contends that the state law criminal proceedings against him are intended to harass him, DeCastro has not established that his being prosecuted for obstruction of a public officer and resisting a public officer is a bad-faith prosecution or intended to harass DeCastro. To the contrary, the misdemeanor charges against DeCastro have clearly been brought in good faith based upon DeCastro's decision to interfere with an active traffic stop and his subsequent choice not to follow the commands of Ofc. Bourque to move away from the traffic stop. The State of Nevada has an important interest in enforcing its criminal laws free from federal interference, and the state criminal proceedings provide a fair and sufficient opportunity for vindication of DeCastro's federal constitutional rights.

MAC:14687-456 5219442_2.docx

No person is immune from prosecution in good faith for his alleged criminal acts. *Douglas*, 319 U.S. at 163. Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. *Id.* The bad-faith and harassment exception to the doctrine of *Younger* abstention only applies in exceedingly rare circumstances, such as those in *Dombrowski*. Defendants in state criminal proceedings routinely allege that state criminal proceedings violate their constitutional rights, including fundamental rights, which makes this a regular occurrence, not an extraordinary circumstance. *See, e.g.*, *Doop v. Wolfson*, No. 222CV00440JADDJA, 2022 WL 1166438 (D. Nev. Apr. 20, 2022). Here, DeCastro has failed to prove, or even allege, facts sufficient to demonstrate that the state law criminal charges against him have been brought in bad-faith or as a method of harassing DeCastro for exercising his First Amendment right to record police interactions.

> **b.  DeCastro's Allegation of a "Chilling Effect" on His Civil Rights Is Not Sufficient to Justify a Federal Injunction.**

With regard to DeCastro's argument that *Dombrowski* permits an injunction because the state law prosecution threatens to chill his civil rights, the argument misstates the relevant law insofar as that portion of *Dombrowski* was abrogated by *Younger*. Furthermore, DeCastro has failed to explain or demonstrate what chilling

MAC:14687-456 5219442_2.docx

effect on his civil rights that the prosecution could have, and his situation is no different in substance from that of any criminal defendant facing the potential loss of a constitutional right – including the most fundamental right, to liberty – in the pending criminal prosecution.

Moreover, the existence of a 'chilling effect,' even in the area of First Amendment rights, has never been considered a sufficient basis, in and of itself, for prohibiting state action. *Younger*, 401 U.S. at 51. Where a statute does not directly abridge free speech, but—while regulating a subject within the State's power—tends to have the incidental effect of inhibiting First Amendment rights, it is well settled that the statute can be upheld if the effect on speech is minor in relation to the need for control of the conduct and the lack of alternative means for doing so. *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); *Cantwell v. Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940); *United Mine Workers of America, Dist. 12 v. Illinois Bar Assn.*, 389 U.S. 217, 88 S.Ct. 353, 19 L.Ed.2d 426 (1967).

The instant case is clearly one in which the criminal statutes being enforced against DeCastro do not directly abridge free speech, and arguably do not even have the incidental effect of inhibiting First Amendment rights. *See* NRS 197.190; *see also* NRS 199.280.3. As such, the *Dombrowski* Court's discussion of a chilling effect on constitutional rights is inapplicable in this case, where the statutes being

MAC:14687-456 5219442_2.docx

enforced are unrelated to a citizen's right to free speech and free expression. Accordingly, DeCastro's bare allegation of a "chilling effect" on his civil rights does not come close to a legitimate justification for injunctive relief to stay the state court criminal proceedings.

### c. The Criminal Charges Against DeCastro Are in Fact "Pending."

With respect to DeCastro's argument that an injunction is permissible because charges against him have not yet been brought, this argument is factually incorrect. In the Preliminary Injunction Motion, DeCastro noted that he was cited for: (1) "False Statement to or Obstruct Police Officer" NRS 197.190; and (2) "Resisting Public Officer" NRS 199.280.3. SER-032. DeCastro's Motion for Preliminary Injunction requested that the District Court stay a hearing in the state criminal proceedings scheduled for June 13, 2023. SER-031. As such, DeCastro was and is manifestly incorrect in his contention that the criminal charges against him are not pending.

Furthermore, even if DeCastro was correct that the Nevada state criminal charges against him were not yet pending, DeCastro misinterprets the case law he relies upon for the proposition that the lack of pending charges would justify injunctive relief here. In *Doran v. Salem Inn*, 422 U.S. 922 (1975), which DeCastro relies upon, the plaintiffs against whom no criminal proceedings were pending were challenging the constitutionality of the subject town ordinance prohibiting

MAC:14687-456 5219442_2.docx

topless dancing. Similarly, the other cases DeCastro relies upon for this argument also deal with plaintiffs challenging the constitutionality of state criminal statutes. *Wooley v. Maynard*, 430 U.S. 705 (1977) (plaintiffs brought suit for declaratory and injunctive relief against enforcement of New Hampshire statute making it a crime to obscure words "Live Free or Die" on state license plates); *Hicks v. Miranda*, 422 U.S. 332 (1975) (theater owner brought action against local officials for declaratory relief as to constitutionality of California obscenity statute and for injunctive relief with respect to seizure of certain films); *Huffman v. Pursue. Ltd.*, 420 U.S. 592 (1975) (Lessee of theater which had been ordered closed under Ohio nuisance statute because obscene films had been shown at the theater brought action for declaratory and injunctive relief challenging the statute); and *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229 (1984) (Trustees of landholding estates sought judgment declaring Hawaii Land Reform Act of 1967 unconstitutional). In this case, DeCastro is not challenging the constitutionality of NRS 197.190 or NRS 199.280.3, but, instead, has brought a civil action for deprivation of rights under 42 U.S.C. §1983. *See* SER-036-057.

As the District Court correctly recognized, DeCastro's bare allegation that criminal charges were not yet pending against him is wholly insufficient to make the incredibly difficult showing that a federal injunction against Nevada's state court criminal proceedings would be appropriate in this case. Moreover, even if

MAC:14687-456 5219442_2.docx

DeCastro's assertion that criminal charges were not pending was correct, it is an irrelevant point where, as here, DeCastro is not challenging the constitutionality of the criminal statutes under which he is being charged.

### 3. DeCastro's New Arguments in the Motion for Reconsideration Should Not Be Given Consideration.

An FRCP 59(e) motion for reconsideration may not present evidence or raise legal arguments that could have been presented at the time of the challenged decision. *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *see also Trentacosta v. Frontier Pacific Aircraft Industries*, 813 F.2d 1553, 1557 n. 4 (9th Cir. 1987) (finding that the district court did not abuse its discretion when it refused to consider affidavits filed for the first time in support of a motion for reconsideration when the appellant had no excuse for the lateness of the submissions); *Novato Fire Protection District v. United States*, 181 F.3d 1135, 1142 n. 6 (9th Cir.1999); *Rosenfeld v. United States Department of Justice*, 57 F.3d 803, 811 (9th Cir.1995); *School District No. 1J, Multnomah County, Oregon v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir.1993).

Here, this Court should not consider the arguments which DeCastro failed to raise in his Motion for Preliminary Injunction, but did subsequently raise in his Motion for Reconsideration and the reply brief in support thereof.

MAC:14687-456 5219442_2.docx

**B.    THE DISTRICT COURT PROPERLY DENIED DECASTRO'S MOTION FOR RECONSIDERATION OF HIS MOTION FOR PRELIMINARY INJUNCTION TO ENJOIN STATE CRIMINAL PROCEEDINGS.**

On June 13, 2023, DeCastro filed his three-page Emergency Motion to Reconsider Motion for Preliminary Injunction to Stay State Proceedings ("Motion for Reconsideration"). SER-028-030. In the Motion for Reconsideration, DeCastro recognizes that the Supreme Court decision in *Younger* states that federal courts should only enjoin a pending state criminal proceedings under exceptional circumstances. SER-029. However, DeCastro argued that his request for injunctive relief can be differentiated because the criminal action in this case is not pending. *Id.* DeCastro asserts that the *Younger* standard does not apply where charges have not yet been filed. *Id.* (citing *Doran v. Salem Inn*, 422 U.S. 922 (1975); *Wooley v. Maynard*, 430 U.S. 705 (1977); *Hicks v. Miranda*, 422 U.S. 332 (1975); *Huffman v. Pursue. Ltd.*, 420 U.S. 592 (1975); and *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229 (1984)). DeCastro goes on to reiterate his argument that he faces the threat of death in a corrupt jail and that the prosecution will inevitably chill his First Amendment rights. SER-030.

A district court may reconsider its grant or denial of a preliminary injunction under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b) (relief from judgment). Under either theory, this Court's review of a denial of a motion to reconsider is for abuse of discretion. *Fuller v.*

*M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir.1991); *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *See All Hawaii Tours, Corp. v. Polynesian Cultural Center*, 116 F.R.D. 645, 648 (D.Hawaii 1987), *rev'd on other grounds*, 855 F.2d 860 (9th Cir. 1988).

Here, DeCastro's Motion for Reconsideration does not present new evidence, provide a cogent argument that the District Court's denial of the injunction was clear error or manifestly unjust, or demonstrate an intervening change in controlling law. This case is no different than the other appeals this Court has considered and determined in which the district court properly declined to interfere in pending state court proceedings, and in which this Court held that the district court did not abuse its discretion in denying the motion for reconsideration because the appellant failed to state any grounds warranting relief. *See, e.g.*, *Maney v. Winges-Yanez*, 643 F. App'x 616 (9th Cir. 2016); *Martello v. Rouillard*, 689 F. App'x 880 (9th Cir. 2017); *Knox v. Brown for Oregon*, 702 F. App'x 639 (9th Cir. 2017).

MAC:14687-456 5219442_2.docx

## VII. <u>CONCLUSION</u>

Based upon the foregoing, Defendants-Appellees respectfully request that this Court affirm the District Court's denial of DeCastro's Motion for Preliminary Injunction and Motion for Reconsideration.

Dated this 10th day of October, 2023.

MARQUIS AURBACH

By /s/ Craig R. Anderson
    Craig R. Anderson, Esq.
    Nevada Bar No. 6882
    Nicholas M. Adams, Esq.
    Nevada Bar No. 15859
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for Defendants-Appellees
    LVMPD, Ofc. Torrey, Ofc. Bourque,
    Ofc. Dingle, Ofc. Sorenson, Ofc.
    Sandoval and Ofc. Doolittle

## STATEMENT OF RELATED CASES

Defendants-Appellees are not aware of any related cases before this Court, and it is believed that there are no related cases under Ninth Circuit Rule 28-2.6.

Dated this 10th day of October, 2023.

MARQUIS AURBACH


By /s/ Craig R. Anderson
    Craig R. Anderson, Esq.
    Nevada Bar No. 6882
    Nicholas M. Adams, Esq.
    Nevada Bar No. 15859
    10001 Park Run Drive
    Las Vegas, Nevada 89145
    Attorneys for Defendants-Appellees
    LVMPD, Ofc. Torrey, Ofc. Bourque,
    Ofc. Dingle, Ofc. Sorenson, Ofc.
    Sandoval and Ofc. Doolittle

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that *(check appropriate option(s))*:

1. ☒ *This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:*

☒ this brief contains <u>8,440</u> words (principal briefs must not exceed 14,000 words; reply briefs must not exceed 7,000 words) excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

□ this brief uses a monospaced typeface (10.5 or fewer characters per inch) and contains _____ lines of text (principal briefs must not exceed 1,300 lines of text; reply briefs must not exceed 650 lines of text), excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. *This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:*

☒ this brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman, 14-point font, or

□ this brief has been prepared in a monospaced spaced typeface using Microsoft Word, _____ font with _____ characters per inch.

3. *This brief complies with the enlargement of brief size permitted by:*

□ Ninth Circuit Rule 28-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

□ court order dated _____. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6). This brief is _____ words, _____lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

MAC:14687-456 5219442_2.docx

☐ the accompanying motion for leave to file an oversize brief pursuant to Circuit Rule 32-2 and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

☐ the accompanying motion for leave to file an oversize brief pursuant to Circuit Rule 29-2(c)(2) or (3) and is _____ words, _____ lines of text or _____ pages, excluding the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii), if applicable.

4.   *Capital Cases:*

☐ This brief complies with the length limits set forth at Ninth Circuit Rule 32-4. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Dated this 10th day of October, 2023.

MARQUIS AURBACH

By /s/ Craig R. Anderson_____
     Craig R. Anderson, Esq.
     Nevada Bar No. 6882
     Nicholas M. Adams, Esq.
     Nevada Bar No. 15859
     10001 Park Run Drive
     Las Vegas, Nevada  89145
     Attorneys for Defendants-Appellees
     LVMPD, Ofc. Torrey, Ofc. Bourque,
     Ofc. Dingle, Ofc. Sorenson, Ofc.
     Sandoval and Ofc. Doolittle

MAC:14687-456 5219442_2.docx

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **DEFENDANTS-APPELLEES' ANSWERING BRIEF** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on the 10th day of October, 2023.

☐ I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

☒ I further certify that some of the participants in the case are not registered CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days to the following non-CM/ECF participants:

Jose DeCastro
1258 Franklin Street
Santa Monica, CA 90404
*Plaintiff-Appellant*


/s/ Leah Dell
An employee of Marquis Aurbach

MAC:14687-456 5219442_2.docx